**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 19-1080**

———————————

HELGA COHEN; STEVEN COHEN; LISA ECHOLS; ROBERT ECHOLS, JR.; MELISSA FRITZ; WAYNE FRITZ; ALEXANDER GILES; CAROLYN GILES; AIMEE GONDI; GOKUL GONDI; DENISE HUBBARD; CHARLES HUBBARD; CHRISTOPHER LONG; LESLIE LONG; JANE MARSHALL; CHRISTOPHER MARSHALL; JOSEPH PARK; SOHEE PARK; JOHN PARROTT; KRISTA PARROTT; JESSE MYERS; JACQUELINE MYERS; KIM RICH; SMYTHE RICH; DONNA STROM,

        Plaintiffs – Appellants,

v.

UNITED STATES OF AMERICA,

        Defendant – Appellee.

———————————

**No. 19-1081**

———————————

MARTHA BROWN; FRANK BROWN; JENNIFER FELDMAN; BARRY FELDMAN; JOHN BABSON; STEVE CLOUD; LAURA CLOUD; ELIZABETH BROGDON,

        Plaintiffs – Appellants,

v.

UNITED STATES OF AMERICA,

        Defendant – Appellee.

**No. 19-1086**

JUDITH HEILICH; SCOTT WEYANT; FORT JACKSON MASONIC LODGE NO. 374, AFM,

        Plaintiffs – Appellants,

v.

UNITED STATES OF AMERICA,

        Defendant – Appellee.

**No. 19-1087**

SUN SUK, d/b/a Saky Japanese Restaurant LLC; JANNETTE FISHER SPIRES; TOMMIE A. SPIRES, JR.; RAMONE M. JACKSON, d/b/a Professional Cuts LLC; OLGA MAZYCK, d/b/a Natural Beauty Salon,

        Plaintiffs – Appellants,

v.

UNITED STATES OF AMERICA,

        Defendant – Appellee.

**No. 19-1090**

KINGS GRANT OWNERS' ASSOCIATION, INC.,

        Plaintiff – Appellant,

v.

UNITED STATES OF AMERICA,

        Defendant – Appellee.

---

Appeals from the United States District Court for the District of South Carolina, at Columbia.  J. Michelle Childs, District Judge.  (3:16-cv-01489-JMC; 3:16-cv-03053-JMC; 3:16-cv-03054-JMC; 3:17-cv-02674-JMC; 3:17-cv-00289-JMC)

---

Argued:  April 15, 2020                                   Decided:  June 3, 2020

---

Before THACKER and HARRIS, Circuit Judges, and Henry E. HUDSON, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:**  Badge S. Humphries, GRIFFIN HUMPHRIES LLC, Sullivan's Island, South Carolina, for Appellants.  Jeffrey E. Sandberg, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  J. Preston Strom, Jr., John R. Alpin, STROM LAW FIRM, LLC, Columbia, South Carolina, for Appellants Helga Cohen, Steven Cohen, Lisa Echols, Robert Echols, Jr., Melissa Fritz, Wayne Fritz, Alexander Giles, Carolyn Giles, Aimee Gondi, Gokul Gondi, Denise Hubbard, Charles Hubbard, Christopher Long, Leslie Long, Jane Marshall, Christopher Marshall, Joseph Park, Sohee Park, John Parrott, Krista Parrott, Jesse Myers, Jacqueline Myers, Kim Rich, Smythe Rich, Donna Strom, Martha Brown, Frank Brown, Jennifer Feldman, Barry Feldman, John Babson, Steve Cloud, Laura Cloud, Elizabeth Brogdon, Sun Suk d/b/a Saky Japanese Restaurant, LLC, Jannette Fisher Spires, Tommie A. Spires, Jr., Ramone M. Jackson d/b/a Professional Cuts, LLC, Olga Mazyck d/b/a Natural Beauty Salon, Judith Heilich, Scott Weyant, and Fort Jackson Masonic Lodge No. 374, AFTM.  Charles H. McDonald, BELSER & BELSER PA, Columbia, South Carolina, for Appellant Kings Grant Owners Association, Inc.  Joseph H. Hunt, Assistant Attorney General, Mark B. Stern, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this lawsuit, property owners in South Carolina seek reparations from the United States for damages caused by an inadequately maintained dam spillway on a military reservation. The district court concluded that the adoption of structural capacity standards for the dams was a discretionary function exercised by military officials divesting the district court of subject matter jurisdiction. We agree and affirm.

In October 2015, the State of South Carolina experienced a storm of historic proportions. During a 24-hour period, Columbia, South Carolina recorded rainfall of approximately 13.4 inches. As a result, two earthen dams located at Fort Jackson, a military training center in Columbia, were breached by the unprecedented flood waters. Plaintiffs were among the residents and businesses situated within the flood plane who sustained significant damage from the resulting flood waters. These lawsuits against the United States seeking monetary damages for negligence, trespass, and nuisance followed.

Plaintiffs contend that the personal and property damage resulting from the storm was the direct result of the failure of the Semmes Lake Dam and the Lower Legion Lake Dam situated on Fort Jackson, a United States Military reservation. Their core claim is that the United States Army, specifically the installation commander at Fort Jackson, was negligent in failing to maintain the damage spillway, which enabled the flood waters to pass over the dam structures and flow downstream.

In the aftermath of the October 2015 storm, the U.S. Army Corps of Engineers ("the Corps of Engineers") conducted an investigation of the spillway capacity of the Semmes

4

Lake Dam.[1]  The Corps of Engineers concluded that the dam's spillway had insufficient discharge capacity to control the intensity of flooding from the October storm.  The Corps of Engineers identified several structural deficiencies that contributed to the breach.  The August 26, 2016 technical review prepared by the Corps of Engineers, following the October 2015 storm, concluded that the overtopping occurred because the dam's spillway could not meet the flow rate and volume requirements necessary to avoid deterioration of dam components and loss of stability.  (J.A. 521–34.)[2]  This inadequacy was initially identified by the Corps of Engineers in a 1997 Emergency Action Plan, which classified the hazard as significant.[3]  (J.A. 435–46 (employing S.C. Code Ann. Regs. § 72-2(B) (table), (C).)  Plaintiffs contend that the failure to remedy these deficiencies, in accordance with standards set by the Corps of Engineers, was the proximate cause of the flooding, which damaged their properties.

Plaintiffs rely on several publications issued by the Department of the U.S. Army articulating structural standards for dams situated on military reservations.  In pertinent part, these publications, issued in 2000 and 2008, provide that "dams on Army installations will be maintained at or above the minimum condition levels of the host state or nation" in

[1] Because the Lower Legion Lake Dike is not considered a dam, it does not have the same structural requirements as a dam.

[2] "J.A." refers to the Joint Appendix filed by the parties in their appeal.

[3] Between October 2006 and March 2008, the dam and its spillway underwent major repairs and alterations.  These included the construction of a new concrete spillway chute.  (*See* J.A. 447–58.)

which the facility is situated. U.S. Dep't of Army, Reg. 420–72, Transportation Infrastructure and Dams 31 § 5-5 (May 1, 2000) [hereinafter AR 420–72]; U.S. Dep't of Army, Reg. 420–1, Army Facilities Management 231 § 7-47 (Feb. 12, 2008) [hereinafter AR 420–1]; *see also* U.S. Dep't of Army, Reg. 420–1–3, Transportation Infrastructure and Dams 8 § 6-1 (9 Apr. 2009). Both publications further provide that "all such dams must be maintained to allow [the flow of flood waters] without major deterioration of dam components, [corrosion, or] loss of stability." AR 420–1, at 231 § 7-47. The 2008 publication also required the garrison commander to ensure that, in providing dam safety services, the U.S. Army complied with all applicable federal laws and regulations. *See id.* at 232, § 7-53.

Significantly, both publications of the Department of the Army clearly stated that the "final decision responsibility on the design flood and risk analysis shall be the decision of the dam owner, the garrison commander." AR 420–72, at 31 § 5-6; AR 420–1, at 231 § 7-47. The 2008 publication also required that all installation dams be reviewed and validated every two years by the garrison commander.[4] AR 420–1, at 231 § 7-46.

---

[4] In June of 2010, the Corps of Engineers issued an emergency action plan which noted that the Semmes Lake Dam again posed a significant environmental hazard. (*See* J.A. 447–58.) In their October 2015 Storm Event Independent Technical Review, the Corps of Engineers concluded that the Semmes Lake Dam was not managed in accordance with U.S. Army regulation and guidance for dams. However, the technical review noted that U.S. Army regulations expressly exempt dams owned or operated by an agency of the federal government from compliance with regulations issued by the South Carolina Department of Health and Environmental Control. S.C. Code Ann. § 49-11-120(4)(b); S.C. Code Ann. Regs. § 72-2(D)(2) (same).

Based on the foregoing regulations and findings by the Corps of Engineers, Plaintiffs seek damages for the negligent maintenance of the Semmes Lake Dam's spillway, which they contend resulted in flood damage to their property. The case was before the district court on the government's motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction, and Plaintiffs' Motion under Rule 56 seeking partial summary judgment.

The government's jurisdictional challenge, grounded on the Federal Tort Claims Act's ("FTCA") discretionary function exception—28 U.S.C. § 2680(a)—turns on whether the structural regulations for dam maintenance promulgated by the Corps of Engineers are mandatory or discretionary. If the garrison commander's decisions on dam maintenance involved an element of judgment or choice, it will fit within the discretionary function exception to the FTCA. *See Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006). If the discretionary function exception does apply, the district court must dismiss the effected claims for lack of subject matter jurisdiction. *Indem. Ins. Co. of N. Am. v. United States*, 569 F.3d 175, 180 (4th Cir. 2009). Typically, plaintiffs bear the burden of proving that the discretionary function exception does not apply. *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005). This Court reviews its application *de novo*. *Suter*, 441 F.3d at 310.

Under the discretionary function exception to the government's waiver of sovereign immunity under the FTCA, the government is not liable for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). As a sovereign, the United States

7

is immune from all suits against it absent an express waiver of its immunity. *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

To support its jurisdictional challenge, the government draws the Court's attention to two pivotal provisions of the Corps of Engineers' published regulations. First, each of the pertinent U.S. Army publications contain a provision that, notwithstanding the regulations at issue, the "final decision responsibility on the design flood and risk analysis shall be the decision of the dam owner, the garrison commander." AR 420–1, at 231 § 7-47; *see* AR 420–72, at 31 § 5-6 (using the term "installation commander" instead of "garrison commander"). Relying on *Baum v. United States*, 986 F.2d 716, 722 (4th Cir. 1993), the government maintains that its position is grounded on a deep well of authority that design and construction decisions are policy considerations.

Secondly, although the regulatory publications at issue prescribe that "Army dams shall be maintained at or above the minimum levels of [the] host state," South Carolina Department of Health and Environmental Control Regulations exempt dams owned or operated by an agency of the federal government. AR 420–72, at 31 § 5-5; AR 420–1, at 231 § 7-47; S.C. Code Ann. § 49-11-120(4)(b); S.C. Code Ann. Regs. § 72-2(D)(2) (same). Therefore, the government argues that the Army's structural standards for dams are in effect hortatory, providing guidance and leaving the ultimate decision to military installation commanders.

Plaintiffs urge the Court to adopt a narrower construction of the Army regulations, focusing on the requirement that Army dams "must be maintained at or above the minimum condition levels of the host state." AR 420–72, at 31 § 5-5; AR 420–1, at 231 § 7-47.

Relying on *Berkovitz v. United States*, Plaintiffs maintain that "the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." 486 U.S. 531, 536 (1988). Here, Plaintiffs argue that structural specifications for dams are mandated by the Corps of Engineers' policy and standards promulgated by the host state—here, South Carolina. The effect of which, in Plaintiffs' view, divests the garrison commander of discretion.

Furthermore, Army Regulation 420–1, Section 7-4(b)(5) holds garrison commanders potentially liable for claims resulting from failure of a dam if all legal and safety requirements are not met. AR 420–1, at 220 § 7-4.

However, as the district court noted, "the addition of 'at or above' in the regulation implies that the garrison commander had a level of discretion." (J.A. 1403 (citing AR 420–72, at 31 § 5-5).) As this Court pointed out in *Baum*, reviewing courts should "ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." 986 F.2d at 721. Furthermore, even if the South Carolina regulation governed military reservations, the district court acknowledged that South Carolina law allows dam owners to depart from state standards, if justified. "If the owner can justify the design to the state regulatory agency's satisfaction, the spillway capacity can fall outside the applicable table range." (J.A. 1403 (citing S.C. Code Ann. Regs. § 72-3; S.C. Code Ann. Regs. § 72-2(B) (table)). Therefore, the court concluded that "the South Carolina regulations, similar to AR 420–72 [the Army Regulations at issue], contain an implied element of discretion." (*Id.*)

9

The district court concluded that the garrison commander's decisions concerning the maintenance and operation of the Semmes Lake and Lower Legion Lake Dams were the type of judgmental decisions shielded from liability by the discretionary function exception to the Federal Tort Claims Act. The court also recognized that there is no specific mandatory federal statute or policy prescribing specific spillway capacity design for the Semmes Lake Dam. Accordingly, the court found Plaintiffs' claims of negligence, nuisance, and trespass were barred by sovereign immunity, depriving the district court of subject matter jurisdiction.

We conclude that the district court's analysis is sound. Our view of the regulations and state statutes at issue collectively supports the conclusion that the ultimate discretion for maintaining dam capacity resides with the garrison commander.

Accordingly, the decision of the district court is

AFFIRMED.